**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rodney Burky, | No. CV-15-08190-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Rodney Burky seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security (Commissioner) denying his application for supplemental security income and disability insurance benefits. Because the decision of the Administrative Law Judge (ALJ) is supported by substantial evidence and is not based on legal error, the Commissioner's decision is affirmed.

## I. Background

### A. Factual Background

Burky is 49 years old and has a ninth grade education. (A.R. 33.) He previously worked as donation taker, groundskeeper, car washer, stone polisher, and painter. Burky has been diagnosed as bipolar and schizophrenic. He last worked in 2011. (*Id.* at 221.)

## B. Procedural History

On August 29, 2012, Burky applied for disability insurance benefits and supplemental security income, alleging disability beginning June 25, 2012. (*Id.* at 15.)

On June 17, 2014, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On October 14, 2014, the ALJ issued a decision that Burky was not disabled within the meaning of the Social Security Act.  The Appeals Counsel denied Burky's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.  On September 28, 2015, Burky sought review by this Court.

## II.  Legal Standard

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III.  Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  At step two, the ALJ determines whether the claimant

has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Burky meets the insured status requirements of the Social Security Act through December 31, 2013, and that he has not engaged in substantial gainful activity since June 25, 2012. (A.R. 17.) At step two, the ALJ found that Burky has the following severe impairments: bipolar disorder, schizophrenia, panic disorder with agoraphobia, and antisocial personality disorder. (*Id.*) At step three, the ALJ determined that Burky does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 18.)

At step four, the ALJ found that Burky has the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to work requiring only occasional interaction with co-workers and supervisors, and no direct contact with the public." (*Id.* at 20.) Accordingly, given his RFC, the ALJ concluded that Burky is capable of performing his past relevant work as a painter and stone polisher. (*Id.* at 23.)

**IV. Analysis**

Burky argues the ALJ's decision is unsupported by substantial evidence because

the ALJ (1) improperly discounted the medical opinion of Dr. Lisa Parsons, (2) erred in finding that Burky's work as a painter and stone polisher qualified as past relevant work, and (3) improperly discounted Burky's credibility regarding the severity of his symptoms. (Doc. 16 at 4-5.) The Court will address each in turn.

### A.  The ALJ Did Not Err in Evaluating the Medical Source Evidence

The ALJ is responsible for resolving conflicts in medical testimony. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* Likewise, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

Dr. Parsons, a psychiatrist, treated Burky for approximately two years. (A.R. 21.) In support of Burky's claim, Dr. Parsons completed a "Mental Ability to Do Work-Related Activities Form." (*Id.* at 323-24.) Therein, she concluded that Burky had a poor ability to follow work rules; relate to co-workers; deal with the public; interact with supervisors; deal with work stresses; function independently; maintain attention and concentration; understand, remember and carry out detailed, but not complex, job instructions; and understand, remember and carry out simple job instructions. (*Id.*) Dr. Parsons cited "severe anxiety with panic attacks that lead to agoraphobia" and "extreme anxiety" as the findings that supported her assessment. (*Id.*) In addition, the assessment covered the period from June 25, 2016, the date in which Burky first saw Dr. Parsons, through January 31, 2013. (*Id.* at 324.)

Dr. Parsons' opinion was contradicted by the opinion of Dr. Shannon Tromp, who assessed less severe mental limitations. (*Id.* at 311-16.)  Unlike Dr. Parsons, Dr. Tromp found that Burky had no impairment in his ability to understand and remember simple instructions, detailed instructions, and work-like procedures or responding appropriately to changes in the workplace. (*Id.*)  Therefore, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Parsons' opinions. *See Lester*, 81 F.3d at 830.[1]

The ALJ did not give significant weight to Dr. Parsons' opinion because it was inconsistent with the medical evidence in the record and failed to account for Burky's recent improvement. (A.R. 22.)  Inconsistency with the medical record is a sufficient basis for discounting medical source evidence. *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ concluded that the assessment conflicted with Dr. Parsons' treatment notes.  Specifically, Dr. Parsons noted that Burky has extreme anxiety, which would made concentration difficult.  But prior to the assessment, she "consistently noted a lack of cognitive defects on the mental status examinations." (A.R. 22.)  Indeed, in June, August, and October of 2012, Dr. Parsons noted Burky had "immediate recall," "intelligence equals fund of knowledge," logical thought process, and no problems with recent or remote memory. (*Id.* at 300, 305, 394.)  Yet in the assessment, she concluded that Burky had poor ability to remember, understand, and carry out simple and complex work instructions. (*Id.* at 324.)  Moreover, the same day she completed the assessment, her treatment notes indicate no problems with cognition. (*Id.* at 389.)[2]

In addition, Dr. Parsons found that Burky had poor ability to relate to coworkers

---

[1] Burky argues Dr. Parsons' opinion was uncontradicted, and therefore the clear and convincing reasons standard applies. (Doc. 21 at 3.)  But Dr. Tromp's conclusions regarding memory, understanding, and adapting to change contradict Dr. Parsons' conclusion that Burky has poor ability in those areas.

[2] Moreover, Dr. Tromp found no cognitive impairments. (A.R. 314.)  Burky's thought process was logical and goal directed, comprehension was good, and he had no perceptual abnormalities. (*Id.*)

and interact with supervisors.  (*Id.* at 323.)  But her treatment notes consistently indicate that Burky was "at ease," "calm," "relaxed," and "cooperative" during the examinations. (*Id.* at 300, 305, 394, 389.)  She also noted that Burky was "engaging," "interested," had appropriate eye contact, laughed appropriately, and had "relaxed posture."  (*Id.* at 300, 305, 394.)  These observations are inconsistent with someone who is incapable of working because they cannot interact with coworkers or supervisors.

The ALJ also concluded that the assessment was inconsistent with Burky's apparent improvement, which is evidenced by Dr. Parsons' treatment notes.  (*Id.* at 22.) In May 2013, after the assessment was completed, Burky reported that he was "doing good actually," his mood was "alright," and that he was "handling things ok."  (*Id.* at 385.)  In August 2013, Burky appears to have taken a step back, noting that he is upset from being denied social security.  (*Id.* at 456.)  Nonetheless, Dr. Parsons noted that he was "mak[ing] progress towards treatment goals."  (*Id.* at 457.)  In January 2014, Burky claimed he was enjoying life, that his anxiety was "not too bad," and that he was doing "a little better than normal."  (*Id.* at 479.)  The treatment notes are inconsistent with Dr. Parsons' 2013 assessment and evidence at least some improvement in Burky's condition.

Burky argues that Dr. Parsons' opinion is consistent with the record, and therefore should have been afforded great weight.  (Doc. 16 at 13.)  But Burky merely offers his own interpretation of the evidence.  This is the ALJ's responsibility, *see Andrews*, 53 F.3d at 1039 (noting that it is the ALJ's duty to interpret and resolve inconsistencies in the medical evidence), and the Court will not disturb the ALJ's findings where his interpretation of the evidence is reasonable given the evidence in the record.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (noting that "the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision").  Accordingly, the Court finds the ALJ set forth specific and legitimate reasons supported by substantial evidence for discounting

1   Dr. Parsons' opinion.  *See Lester*, 81 F.3d at 830.[3]

2   **B.  The ALJ Did Not Err In Finding Burky Could Perform Past Work**

3   At step four, the ALJ found that, given his RFC, Burky could perform his past

4   relevant work.  (A.R. 23.)  Burky argues the ALJ erred by finding that his previous work

5   as a stone polisher and painter constituted past relevant work because he did not earn

6   enough for a sufficient duration.  (Doc. 16 at 14.)  The Commissioner appears to concede

7   that Burky's past work as a stone polisher does not qualify as past relevant work.  (Doc.

8   20 at 7-8.)  It argues, however, that this error is harmless because Burky's past work as a

9   painter qualifies as past relevant work.

10   Past relevant work is defined as "work that you have done within the past 15

11   years, that was substantial gainful activity, and that lasted long enough for you to learn to

12   do it."  20 C.F.R. § 404.1560(b)(1).  "The [SSA] grants to the Secretary the authority to

13   determine when labor performed or earnings derived from labor constitute the ability to

14   engage in substantial gainful activity."  *Byington v. Chater*, 76 F.3d 246, 248 (9th Cir.

15   1996) (citing 42 U.S.C. § 423(d)(4)).  "[E]arnings are a factor in a determination of

16   whether [a claimant's] work amounted to substantial gainful activity, but as the

17   regulations make clear, are not determinative."  *Id.* at 250 (citing 20 C.F.R. §

18   404.1575(a)).  If monthly earnings fall below a certain threshold, a rebuttable

19   presumption exists that the activity did not constitute substantial gainful employment.

20   *Baxla v. Colvin*, 45 F. Supp. 3d 1116, 1136 (D. Ariz. 2014).

21   Burky worked as a painter throughout 2003, earning $14,141.25, or $1,178.44 per

22   month.  Throughout 2004, he worked at two different painting companies and earned a

23   total of $17,979.50, or $1,498.29 per month.  Throughout 2005, Burky earned

24   $21,047.75, or $1,753.98 per month.  Burky also appears to have worked as a painter

25   from 2006 through 2008, however, he earned far less during those years, and thus it is

26

27       [3] The Court also notes that Dr. Parsons' findings appear to be based largely on
     Burky's description of his symptoms.  There are no clinical tests that support the
28   diagnoses, which makes it difficult to distinguish Burky's self-reports from actual clinical
     findings.

likely this work does not qualify as substantial gainful activity.  (A.R. 198-99.)  As such, the Court will analyze only whether Burky's work as a painter from 2003 to 2005 qualifies as past relevant work.

The Dictionary of Occupational Titles assigns a specific vocational preparation level of 7 to a painter.  DOT 840.381-010.  This means that it takes over two years and up to four years to learn the job.  *Id.*  In addition, in order to constitute substantial gainful employment, Burky must have earned at least $800 per month in 2003, $810 per month in 2004, and $830 per month in 2005.  *See Substantial Gainful Activity*, Social Security Administration, available at https://www.ssa.gov/oact/cola/sga.html, last visited July 19, 2016.

The Court finds that Burky's work as a painter qualifies as past relevant work. From 2003 to 2005, Burky's earnings far exceeded the monthly threshold, and thus the work qualifies as substantial gainful activity.  Furthermore, Burky performed this work for three years as substantial gainful activity, which falls squarely within the time period deemed necessary to learn the job.  Burky argues that he must have worked at a substantial gainful level for four years in order for his work as a painter to qualify as past relevant work.  (Doc. 21 at 6.)  But Burky cites no authority that a claimant must perform the job for the full recommended duration in order to learn it.  In any event, Burky continued to work intermittently as a painter for during the next three years, which suggests he fully learned the job and could have performed such work at a substantial gainful level.  Accordingly, the Court finds the ALJ did not err in concluding that Burky could perform his past relevant work as a painter.[4]

### C.  The ALJ Did Not Err In Evaluating Burky's Credibility

Burky argues the ALJ erred in evaluating the credibility of his testimony regarding

---

[4] This finding renders the ALJ's decision that Burky could perform past relevant work as a stone polisher harmless. *See Maydanis v. Colvin*, 119 F. Supp. 3d 969, 973 (D. Ariz. 2015) ("An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination."). Here, because Burky can perform past relevant work as a painter, the ALJ's nondisability determination is still supported by substantial evidence.

the severity of his symptoms.  (Doc. 16 at 18.)  In evaluating credibility, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

At the hearing, Burky testified that he was let go from his last job because of depression and mood swings.  (A.R. 36.)  He stated that he has lived alone in an apartment for eight years and that his father takes care of his bills and supports him.  (*Id.* at 39-40.)  Burky is able to take care of his hygiene, cook meals, and has a cat.  (*Id.* at 43.)  During the day, he drinks his coffee, plays with his cat, calls his father, and watches TV.  (*Id.* at 43.)  His hobbies include watching baseball and playing guitar, which he plays twice a week.  (*Id.* at 43-44.)  He does not have any friends or a significant other, does not attend church, does not have a computer, and does not go out.  (*Id.* at 44-45.)  He does his own laundry, dishes, and other household cleaning.  (*Id.* at 45.)  He testified that he quit smoking and using alcohol three years ago.  (*Id.* at 45-46.)[5]

When asked why he was unable to work, Burky stated:  "I get racing thoughts.  My depression, sometimes I – if it's not an angry mood swing, I'll just start breaking out into tears for no reason at all.  It's really kind of hard to function when this goes on."  (*Id.* at 47.)  He stated that this occurs a couple times a week and that he is taking medication, which helps him most of the time.  (*Id.*)  Burky further stated that his condition prevented him from "[f]ollowing instructions, talking with bosses, having difference of

---

[5] This testimony appears to be untruthful.  In January 2014, five months before he testified at the hearing, Burky reported to Dr. Parsons that he was continuing to smoke ten cigarettes per day.  (A.R. 479.)

1    opinions the way things should be done and shouldn't be done." (*Id.*)  Burky testified

2    that he feared leaving his house and has hallucinations.  (*Id.* at 48.)  When he is on

3    medication, he only experiences one mood swing each week.  (*Id.* at 49.)  He stated that

4    he has dyslexia, which makes him easily distracted.  (*Id.*)

5         The ALJ found Burky's statements regarding the intensity, persistence and limited

6    effects of his symptoms not fully credible because they were inconsistent with his

7    activities of daily living and inconsistent with objective medical evidence in the record.

8    (*Id.* at 20-21.)  "[W]hether the claimant engaged in daily activities inconsistent with the

9    alleged symptoms" is relevant to a claimant's credibility.  *Molina v. Astrue*, 674 F.3d

10   1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).  Here, the ALJ noted that

11   Burky "manage[d] well on his own" considering he handled his personal care, did

12   laundry, household chores, cared for his cat, and prepared his own meals.  (A.R. 20-21.)

13   In addition, he noted that Burky is capable of handling his own finances, including

14   paying bills, counting change, and using a savings account and checkbook, which

15   undermines his claims that he cannot concentrate or carry out simple instructions.  (*Id.* at

16   232.)  But these activities are done in isolation, without any work pressure, and involve

17   little concentration.  Consequently, the Court finds that these reasons, standing alone, are

18   insufficient to discount Burky's credibility.[6]

19        This error is harmless, however, because the ALJ provided another sufficient

20   reason.  An ALJ may discount a claimant's credibility if the "statements at [his] hearing

21   do not comport with objective evidence in [his] medical record."  *Bray*, 554 F.3d at 1227.

22   In making this finding, the ALJ cited Dr. Parsons' treatment notes, discussed in length

23   above, which document Burky's improvement and demonstrate that he was doing well in

24   treatment.  (A.R. 21.)  The ALJ also noted that, in Dr. Parsons' opinion, Burky was

25

26        [6] The ALJ correctly concluded that one of Burky's statements regarding his daily
     activities is inconsistent with his severe anxiety.  For example, in a self-assessment form
     completed in October 2012, Burky stated that he only goes outside of his house once or
27   twice a month for appointments and grocery shopping because he lost his driver's license
     due to DUI, (*Id.*), not because of anxiety, as was his testimony, (*Id.* at 47).  This is at least
28   partially inconsistent with his claim that his impairments are so debilitating that he cannot
     work.  This reason is sufficient to partially discount Burky's testimony.

consistently making progress in treatment and showing improvement. (*Id.*) Indeed, on several occasions during the latter stages of his treatment, Burky stated that he was doing well and that his medication was helping. In addition, the ALJ cited Dr. Tromp's report, which found that Burky's symptoms were less frequent after he began taking medication and that Burky exhibited stable mood, adequate memory, attention, concentration, and acted socially appropriate during his exams. (*Id.* at 314-15.) This evidence suggests Burky is able to interact with people one-on-one or in small group settings. It also undermines his testimony that his mood swings cause him to be unable to interact at all with coworkers or supervisors. The ALJ's interpretation of the medical evidence is reasonable, and this reason is sufficient.[7]

Accordingly, the Court finds the ALJ provided specific, clear, and convincing reasons for discounting Burky's credibility regarding the severity of his symptoms, and that those reasons are supported by substantial evidence. *Vasquez*, 572 F.3d at 591.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 27th day of July, 2016.

Douglas L. Rayes
United States District Judge

---

[7] Notably, the ALJ did not completely discredit Burky's testimony. The RFC precludes Burky from interacting with the general public, but permits occasional contact with coworkers and supervisors. (A.R. 20.) This finding is consistent with Burky's testimony that he gets anxious in large crowds as well as his behavior exhibited during his medical examinations. (*Id.* at 44.)